UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OTIS K. GAINOUS,<br>*Plaintiff,*<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner, Social Security Administration,<br>*Defendant.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION 4:11-cv 02331 |

**OPINION ON SUMMARY JUDGMENT**

Plaintiff Otis K. Gainous filed this case under the Social Security Act, 42 U.S.C. §405(g) for review of the final decision of the Commissioner denying his request for supplemental security income.[1] Before the court are the parties' cross-motions for summary judgment. (Dkts. 14, 15). Having reviewed the motions, the administrative record and the applicable law, the court denies Gainous's motion for summary judgment and grants the Commissioner's motion.

I.   **Background**

A. **Procedural History**

Gainous filed an initial application for supplemental security income under Title XVI of the Social Security Act (the "Act") with the Social Security Administration on December 18, 2008 due to impairments which, Gainous alleges, became disabling on

---

[1] The parties have consented to the jurisdiction of this Magistrate Judge for all purposes, including final judgment.

December 18, 2006. (Tr. 151, 167).[2] After Gainous's application was denied at the initial and reconsideration levels (Tr. 91, 101), Gainous requested a hearing before an administrative law judge ("ALJ"), which was held February 17, 2010. (Tr. 45-85, 104-05). The ALJ's decision, dated March 11, 2010, denied Gainous's application for disability benefits, finding Gainous was not disabled under the Act. (Tr. 32-40). On April 28, 2011 the Appeals Council denied Gainous's request for review of the ALJ's decision transforming it into the final decision of the Commissioner. (Tr. 1-3). *See Sims v. Apfel*, 530 U.S. 103, 107 (2000). Gainous filed suit in this Court on June 17, 2011. (Dkt. 1-1).

### B. **Factual History**

Gainous was 50 years of age at the time of the hearing. (Tr. 50). Gainous's past relevant work experience is limited to his previous employment as a pipe installer. (Tr. 53, 79-81). Gainous was present and testified at the hearing, and was represented by counsel. (Tr. 45-85). The ALJ also heard testimony from Ms. Cecile Johnson, a vocational expert. (Tr. 78-83). In his testimony, Gainous alleged he was disabled due to chronic back pain resulting in stiffness in his left knee and upper thigh, stiffness in his neck and left shoulder, and depression. (Tr. 55-59). Gainous testified that because of his pain, he is unable to walk further than three blocks at a time without being forced to stop and rest (Tr. 55, 77), has difficulty reaching either arm overhead, and is unable to lift more than four or five pounds with his right, dominant, arm. (Tr. 56-57, 76). Although he is able to make oatmeal for breakfast for himself each morning (Tr. 76) and the record reveals he does some grocery shopping (Tr. 187, 218), Gainous testified he never picks

---

[2] The transcript of the administrative record will be cited as "Tr.___".

up a gallon of milk (Tr. 77) or helps out with chores around his mother's house where he lives. (Tr. 75, 76). Gainous's medical records indicate he is a heavy smoker and a regular drinker, although each of his physicians has advised him to stop for his health's sake and because of the medication he is taking. (Tr. 63). As of February 17, 2010, Gainous's most recent visit to his primary physician was in October 2009. (Tr. 54-55).

## II. <u>Applicable Law</u>

### A. <u>Standard of Review</u>

Section 405(g) of the Act governs the standard of review in disability cases. *Waters v. Barnhart*, 276 F.3d 718 (5th Cir. 2002). The Commissioner's decision to deny Social Security benefits is reviewed by the federal courts to determine whether (1) the Commissioner applied the proper legal standard and (2) the Commissioner's decision is supported by substantial evidence. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), and is "more than a scintilla and less than a preponderance." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court does not reweigh the evidence, try the questions *de novo*, or substitute its own judgment for that of the Commissioner. *Masterson*, 309 F.3d at 272. The courts strive for judicial review that is deferential but not so obsequious as to be meaningless. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

## B. Standard for Determining Disability under the Act

To qualify for supplemental income, a plaintiff must prove he has a disability, defined under the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A) and 1382c(a)(3)(A); *Masterson*, 309 F.3d at 271. The ALJ must follow a five-step sequential analysis to determine whether a plaintiff is in fact disabled:

1. Is the claimant currently engaged in substantial gainful activity, *i.e.*, working? If the answer is yes, the inquiry ends and the claimant is not disabled.

2. Does the claimant have a severe impairment? If the answer is yes, the inquiry proceeds to question 3.

3. Does the severe impairment equal one of the listings in the regulation known as Appendix 1? If so, the claimant is disabled. If not, then the inquiry proceeds to question 4.

4. Considering the plaintiff's residual functional capacity (RFC), can the claimant still perform his past relevant work? If so, the claimant is not disabled. If not, the inquiry proceeds to step 5.

5. Considering the claimant's RFC, age, education, and work experience, is there other work claimant can do? If so, claimant is not disabled.

20 C.F.R. §§ 404.1520, 416.920; *Waters*, 276 F.3d at 718. At step five, the burden shifts to the Commissioner to show that employment for the claimant exists in the national economy. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).

III. **Analysis**

The ALJ engaged in the five step procedure outlined above. (Tr. 34-39). At step one, the ALJ found Gainous had not engaged in substantial gainful activity since the date of his application, December 18, 2008. (Tr. 34). At step two, the ALJ found Gainous's chronic low back pain, obesity, cervical spinal stenosis with radiculopathy, and depression/anxiety were all severe impairments. (Tr. 34). At step three, the ALJ found the above named impairments, considered singularly and in combination, did not meet or medically equal one of the listed impairments in Appendix 1. (Tr. 35) *See* 20 C.F.R. § 404.1526(b)(3). At step four, the ALJ assessed Gainous's RFC and found Gainous could not return to his past relevant work as a pipe insulator because he can only perform "light" work as opposed to the medium work pipe insulating requires. (Tr. 38). At step five, the ALJ considered Gainous's RFC in conjunction with his age, education, and work experience and determined there are jobs that exist in significant numbers in the national economy that Gainous can perform. (Tr. 38). Gainous argues the Commissioner erred in finding Gainous was not entitled to supplemental security income because the ALJ failed to properly evaluate Gainous's RFC and the ALJ erred in finding Gainous retains the ability to perform other work existing in significant numbers in the national economy. (Dkt. 14-6, 10).

## A. <u>Evaluation of the Plaintiff's RFC</u>

RFC is the *most* a person can do, despite any limitations. 20 C.F.R. § 416.945(a). The ALJ found, in relevant part, that Gainous has the RFC to perform light work with the following limitations: stand or walk for up to 6 hours per work day; sit for 6 hours per work day; is right-hand dominant; and lift up to 20 pounds occasionally and 10 pounds frequently. (Tr. 36). Gainous argues there is a lack of substantial evidence supporting the ALJ's decision not to accommodate for Gainous's ability to use his hands, and lack of substantial evidence for the ALJ's finding that Gainous's can stand or walk for up to 6 hours per work day. (Dkt. 14-6).

In determining a claimant's RFC, the Commissioner must consider the claimant's impairments and any related symptoms including pain that may cause limitations affecting the claimant's abilities in a work setting. 20 C.F.R. §416.945(a). As Gainous points out, the Commissioner is required to consider the limiting effect of *all* of the claimant's impairments, even those that are not severe. *See* (Dkt. 14-6); C.F.R. § 416.945(e). However, the Commissioner is *not* required to consider impairments that are not medically determinable through medically relevant and other presented evidence. *See* 20 C.F.R. §416.929(a).

### i. <u>Hand Impairment</u>

Gainous argues the evidence indicates he is limited in his ability to perform handling or fingering activities. (Dkt. 14-9). However, a close reading of each of Gainous's medical records reveals that although Dr. Pham noted numbness in Gainous's

6

left thumb in May and June of 2007, in July of 2007 Dr. Pham noted "no more numbness" and that Gainous's strength was normal. (Tr. 333) (May); (Tr. 278) (June); (Tr. 329) (July). In February of 2008, Pham noted that during a left arm "follow up," there was no pain (Tr. 268). Several instances of reported numbness in Gainous's left hand do exist in the record, (Tr. 339, 340), however, after Gainous's visit with Dr. Pham in July through his last known doctor visit, each medical report notes Gainous's extremities are normal. (Tr. 256, 262, 271, 415, 421, 429, 435, 442, 444, 450). Furthermore, neither Gainous nor his attorney mentioned Gainous's alleged difficulty to perform fingering activities during his hearing; instead, the discussion was limited to the amount of weight Gainous believed he could lift and his ability to reach overhead. (Tr. 56-57, 76). These are both areas the ALJ *did* take into consideration when assessing Gainous's RFC. (Tr. 36, 37). Additionally, the ALJ included the limitation that Gainous was "right-hand dominate" when giving the hypothetical to the vocational expert. (Tr. 36, 81).

Gainous failed to prove that he has a severe impairment related to handling or fingering ability, and the many references to Gainous's extremities and Dr. Pham's most recent reports provide more than a scintilla of reliable evidence to justify the lack of accommodation for this specific alleged limitation. Therefore, the ALJ did not err in failing to limit Gainous's ability to perform handling and fingering activities when making his assessment.

7

ii. **Standing and Walking**

The ALJ first accepted that Gainous's medically determinable impairment (chronic back pain and spinal difficulties) could reasonably be expected to cause his alleged symptoms (his ability to stand and walk). (Tr. 37). However, the analysis does not end there. The ALJ is then required to evaluate the intensity and persistence of the symptoms to determine how the symptom limits the claimant's ability to work. 20 C.F.R. §416.929. It is within the ALJ's discretion to determine the disabling nature of pain. *Barajas v. Heckler*, 738 F.2d 641, 644 (5th Cir. 1984). In making this determination, the ALJ should consider all available evidence, including the claimant's history, his medical records, and statements from the claimant and any other relevant party. 20 C.F.R §416.929. After applying this standard, the ALJ determined Gainous's statements regarding the intensity, persistence, and limiting effects of his symptoms, were not entirely credible based on the entire case record. (Tr. 37, 38).

Gainous contends the ALJ's credibility finding is based solely on an alleged inconsistency between Gainous's daily activities and his alleged limitations, and argues the ALJ did not provide sufficient explanation of these alleged inconsistencies to meet Social Security Ruling requirements. (Dkt. 14-8). The Social Security Ruling 96-7p requires the ALJ to give specific details of the reasons for a credibility finding and also requires the presence of sufficient supporting evidence in the case record for those stated reasons. Gainous argues the ALJ's decision is not supported by substantial evidence because first, the decision fails to reference the daily activities that are out of proportion

to Gainous's comments, second Gainous has not testified to these activities, and finally there is no evidence of these activities. (Dkt. 14-9). Although the ALJ did make statements about inconsistency between Gainous's daily activities and complaints Gainous made, this is not the sole basis for the ALJ's determination. (Tr. 37). The ALJ noted that Gainous's medical treatment was "conservative in nature," consisting only of pain medication and physical therapy, never surgical intervention. (Tr. 37). The ALJ took both the positive and negative effects of Gainous's medication into consideration (Tr. 37, 38). The ALJ also specifically referred to Dr. Janki's examination of Gainous and her determination that Gainous could perform all activities of daily living with no functional restrictions. (Tr. 37, 349). Finally, the ALJ noted that no treating or examining physician had ever restricted Gainous's activities any more than those assessed in the RFC. (Tr. 38).

Gainous references numerous areas in the record to provide support for his contention that he is unable to stand or walk for 6 hours per work day. (Dkt. 14-6-9). However, it is well settled that it is not within this court's authority to substitute its own judgment for that of the Commissioner's. *Masterson*, 309 F.3d at 272. Rather, the court must affirm the decision of the Commissioner unless there is no substantial evidence in the record to support the Commissioner's decision or the Commissioner made an error in the application of the law. *Legget*, 67 F.3d at 564. The evidence of record supports each of the ALJ's positions, including the inconsistencies between Gainous's daily activities and his alleged impairments. First, the ALJ noted that there is no documentation of any

medical condition that results in an inability to move from place to place effectively (Tr. 35). In almost thirty visits to at least six examining medical professionals, no professional recommended any type of restriction more limiting than what the ALJ assessed. (Tr. 250-454). Additionally, Gainous's physical therapist, Kendall, noted in late 2008 that Gainous was showing progress with his physical therapy (Tr. 289) and observed in September of 2008 that claudication[3] was not likely due to Gainous's performance during physical therapy. (Tr. 286). Moreover, Gainous's claudication is noted as "resolved" on each of his medical records after January of 2009. (Tr. 415, 421, 429, 435, 450, 456). Second, the ALJ's assertion that the duration, frequency and intensity of Gainous's pain and other symptoms lacks credibility is well-founded. (Tr. 37-38). Dr. Janki observed Gainous could sit, stand, move about, and lift and handle objects without difficulty or evidence of pain. (Tr. 348). This statement is uncontradicted by any other doctor in the record. In fact, although Gainous stated testified that he experiences a pain level of 10/10 about four days a week, and on average his pain level is at least at a 6/10 (Tr. 69), the record reveals that he reported no pain whatsoever during more than ten of his doctor's visits, and had only one documented episode of an 8/10 pain level and one of a 6/10 level. (Tr. 255, 265, 268, 367, 286, 289, 331, 420, 433, 449, 454) (no pain); (Tr. 297, 439) (pain level of 6 and 8). Furthermore, Dr. Fox reviewed Gainous's medical history, and determined Gainous could sit or walk for 6 hours a day and lift 20 pound objects occasionally and 10 pound objects frequently just as the ALJ stipulated when

---

[3] Claudication, typically referred to as intermittent claudication, is a condition that is characterized by attacks of lameness and pain brought on by walking, chiefly in the calf muscles, but can occur in other muscle groups as well. *Stedman's Medical Dictionary*. 2006.

assessing Gainous's RFC. (Tr. 36-38). Dr. Fox's assessment was confirmed by yet another physician, Dr. Herman, lending even more weight to the ALJ's decision. (Tr. 411). Gainous's lack of credibility is also bolstered by the opinion of Dr. Rubenzer who found some evidence of exaggeration or feigning when Gainous was questioned about his psychiatric problems. (Tr. 38). Finally, although the daily activities of Gainous were not the only factor the ALJ took into consideration, it bears noting that there is evidence suggesting Gainous's daily activities are not consistent with the level of impairment he alleges. Although Gainous stated he was unable to lift even a milk carton or do chores to help his mother, Gainous filled out disability forms on two occasions stating that he does grocery shopping at least once a month and that he visits with friends at least once a week. (Tr. 187, 218).

Therefore, because there is more than a scintilla of relevant evidence in the record to support the ALJ's finding, the ALJ did not err in finding that Gainous can walk or stand for 6 hours per work day.

### B. Finding the Plaintiff Retains the Ability to Perform Other Work

Gainous contends the ALJ erred in finding Gainous retains the ability to perform work at several jobs because the ALJ relied on the testimony of the vocational expert who was given an incomplete and therefore defective hypothetical. (Dkt. 14-10, 11). It is well within the ALJ's prerogative to rely on a vocational expert where a claimant is not able to perform the full range of light, unskilled work. *Carey v. Apfel*, 230 F.3d 131, 145-46 (5th Cir, 2000). A hypothetical question is defective, resulting in reversible error

unless it reasonably incorporates all disabilities recognized by the ALJ, and the claimant is given an opportunity to correct the deficiencies in the hypothetical. *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001). There is no argument that Gainous lacked the opportunity to correct deficiencies in the hypothetical. When given the chance at the hearing to pose any additional questions to the vocational expert, Gainous's attorney responded "no, no you covered what I would have asked, your honor." (Tr. 83). Instead, Gainous's incomplete hypothetical argument is based solely on the premise that the ALJ failed to place proper limitations on Gainous's RFC. (Dkt. 14- 10). Because (i) the ALJ did not err in finding Gainous can perform the standing or walking requirements of light work, (ii) the ALJ did not err in failing to place limitations on Gainous's handling and fingering capabilities, and (iii) the hypothetical reasonably incorporated all disabilities recognized by the ALJ, this argument fails. (Tr. 81-82). *See Boyd* 239 F.3d at 707-08.

## IV. Conclusion

The Commissioner's decision is supported by substantial evidence and based on the appropriate legal standards. Therefore, Gainous's motion for summary judgment is denied, and summary judgment will be granted in favor of the Commissioner.

Signed at Houston, Texas on June 18, 2012.

*[signature]*
Stephen Wm. Smith
United States Magistrate Judge